In re The CHARLOTTE OBSERVER (A DIVISION OF the KNIGHT PUBLISHING COMPANY), Jefferson–Pilot Communications Company, WSOC Television, Inc., and The North Carolina Press Association, Petitioners–Intervenors.

UNITED STATES of America,

v.

James O. BAKKER and Richard W. Dortch, Defendants.

No. 89–5803.

United States Court of Appeals, Fourth Circuit.

Submitted June 19, 1989.

Decided June 27, 1989.

Edwin Osborne Ayscue, Jr., Jonathan E. Buchan, James G. Middlebrooks, Smith, Helms, Mulliss & Moore, John Henderson Hasty, Waggoner, Hamrick, Hasty, Monteith, Kratt, Cobb & McDonnell, Russell Schwartz, Charlotte, N.C., Hugh Stevens, Everett, Hancock & Stevens, on brief, for petitioners.

William Kase Diehl, Jr., Mark Timothy Calloway, John S. Arrowood, James, McElroy & Diehl, PA, Harold Johnson Bender, Bender, Lawson & Howerton, Charlotte, N.C., on brief, for respondent.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

CORRECTED OPINION

PHILLIPS, Circuit Judge:

This matter is before the court on the petition of the named news organizations

seeking, as intervenors, relief under the All–Writs Act, 28 U.S.C. § 1651, from orders of the Honorable Paul H. Taylor, United States Magistrate for the Western District of North Carolina, as affirmed by an order of the Honorable Robert D. Potter, Chief Judge, closing to the press and public a scheduled hearing on the motion by the defendants for a change of venue, and sealing certain documents filed in connection with that motion. We conclude that the petitioners' challenge to the magistrate's closure and sealing orders on first amendment grounds is well taken and that they are entitled to the relief sought.

## I

In the underlying criminal action, the defendants, Bakker and Dortch, are charged with multiple counts of mail and wire fraud arising out of their activities with the PTL religious organization. Under a standing order of the District Court for the Western District of North Carolina, the United States Magistrate is authorized "[t]o hear and determine any non-dispositive procedural or discovery motion or other such pretrial matter in a civil or criminal case as provided by 28 U.S.C. § 636(b)(1)(A)." [1] Accordingly, all pretrial matters in this criminal action were referred for disposition to Magistrate Taylor.

On April 14, 1989, defendants Bakker and Dortch moved for a change of venue, claiming adverse pretrial publicity. On May 10, 1989, Magistrate Taylor ordered that anything with regard to that motion be sealed. On June 14, 1989, the magistrate ordered that the hearing on the motion to change venue, which was then scheduled for Tuesday, June 20, be closed to the public and press.

The magistrate's closure and sealing orders were, so far as the record discloses,

entered on his own motion. In the June 14 closure order he stated that "permitting the public and press to attend this hearing would pose the risk that the alleged prejudicial publicity of which the Defendants complain would be republished and re-aired in the print and electronic media." Both orders were entered without notice to the public and without opportunity for members of the public to be heard in opposition to the closing of the hearing.

The petitioners—*The Charlotte Observer* (a division of The Knight Publishing Company), Jefferson–Pilot Communications Company (and its licensees WBTV, WBT, and WBCY), WSOC Television, Inc., and the North Carolina Press Association—filed in the district court on June 15, a motion with supporting memorandum of law to reconsider and/or stay the June 14, 1989 order of Magistrate Paul H. Taylor, and requested an immediate hearing.

On Friday, June 16, Chief Judge Potter issued an order referring the motion to Magistrate Taylor, stating "that the Magistrate is the appropriate judicial officer to reconsider the June 14, 1989 Order." Upon considering petitioners' motion and attached memorandum of law which pointed out this court's requirement, *see In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir.1984), that closure and sealing orders be entered only on prior notice and opportunity to be heard by interested representatives of the press and public, Magistrate Taylor immediately set a hearing for 11:00 AM Monday, June 19, to reconsider his prior orders. At the conclusion of that hearing—which we are satisfied effectively met the procedural requirements of the *In re Knight* rule for notice and opportunity for hearing—the magistrate reaffirmed his prior orders and declined either to open the change of venue hearing or to stay the

---

1. 28 U.S.C. § 636(b)(1)(A) provides:
   Notwithstanding any provision of law to the contrary—
   (A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to

suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

hearing pending an appeal of the closure order.

The petitioners then simultaneously noticed appeals both in the district court and in this court, and filed with a member of this panel the instant petition for relief under the All–Writs Act, and requested a stay of the scheduled change of venue hearing pending consideration of the petition. Late on June 19, Chief Judge Potter entered an order affirming the Magistrate's June 19 order and declining to stay it. On June 20, a member of this panel, acting as a single circuit judge, granted the intervenors' motion for stay of the change of venue hearing pending consideration of the petition on the merits, and referred the petition to this panel. The panel directed expedited briefing by all parties who desired to be heard on the petition, and received written submissions from petitioners and from counsel for the defendants who were designated by the district court to represent the positions of Magistrate Taylor and Chief Judge Potter supporting the constitutionality of the magistrate's sealing and closure orders.

## II

We have jurisdiction under the All–Writs Act and Rule 21 of the Fed.R.App.P. to review the sealing and closure orders at issue. Though there are also pending in this court direct appeals by the intervenors from the challenged orders of the magistrate and of the district judge, those obviously protective appeals raise the same issues, and we consider it technically appropriate to review the orders at issue pursuant to our power under the All–Writs Act. *See In re Washington Post Co.*, 807 F.2d 383, 388 (4th Cir.1986) ("mandamus ... the preferred method"). Though the authoritative order of the district court in this

matter is now that of Chief Judge Potter "affirming" the magistrate's June 19 order, our review is essentially a *de novo* consideration of the constitutionality of the magistrate's directly operative closure order of June 19.[2]

The petitioning news organizations are properly before us as intervenors, having earlier been formally permitted to intervene in the matter by the district court.

## III

■ The basic principles that control both the substantive and procedural aspects of the challenged sealing and closure orders are well settled and do not need extensive recapitulation. The only issue is whether the challenged orders violated those principles. We conclude that they violated the public's right of access to criminal proceedings as protected by the first amendment and so must be vacated.

■ Because the public's right to access to criminal trials and pretrial proceedings is protected by the first amendment, the proceedings here at issue could not properly be closed except on the basis of specific judicial findings that " 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 13–14, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986) (*Press Enterprise II*) (quoting *Press Enterprise I*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984)); *In re Washington Post*, 807 F.2d at 390; *In re Knight*, 743 F.2d at 234. The "higher value" asserted here as the basis for the closure orders is the defendants' sixth amendment right to trial by an impartial jury, specifically by one not so biased against defendants by pretrial publicity as to make a fair trial

**2.** Because a district judge has here affirmed the magistrate's orders, we need not decide whether under the circumstances the collateral orders of the magistrate would have been directly reviewable by this court by appeal or writ petition. *Compare United States v. Bogard,* 846 F.2d 563, 567 n. 2 (9th Cir.1988) (court of appeals has jurisdiction to review on direct appeal magistrate's non-dispositive order entered pursuant to 28 U.S.C. § 636(b)(1)(A)), *with United Steel-*

*workers of America, AFL–CIO v. New Jersey Zinc Co.,* 828 F.2d 1001, 1007–08 (3d Cir.1987) (no jurisdiction). In the procedural posture of this case, we effectively review the magistrate's orders *de novo,* i.e., under the same standard by which a district judge "may reconsider" any non-dispositive "pretrial matter" determined by a magistrate designated for the purpose under 28 U.S.C. § 636(b)(1)(A) (whether magistrate's ruling "is clearly erroneous or contrary to law").

impossible. In assessing whether closure is appropriate in the face of such conflicting constitutional claims, there is an ingoing presumption in favor of openness. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980). Though this presumption may be overcome in a particular case and a pretrial proceeding closed in order to protect a defendant's right to a fair trial, *see, e.g., Gannett Co. v. DePasquale,* 443 U.S. 368, 378–79, 99 S.Ct. 2898, 2904–05, 61 L.Ed.2d 608 (1979) (suppression hearing), this can only be done on the basis of specific judicial findings that (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity; (2) there is a substantial probability that closure would prevent that prejudice; and (3) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. *Press Enterprise II,* 478 U.S. at 14, 106 S.Ct. at 2743. To insure stringent safeguarding of the constitutional rights at stake we have required district courts considering closure of proceedings to give interested parties prior notice and an opportunity to be heard before deciding the issue, and to support any decision to close with reasons and findings of record, including why no less drastic alternatives to closure are feasible. *In re Washington Post,* 807 F.2d at 390–91; *In re Knight,* 743 F.2d at 234–35. We have required such specific reasons and findings on the record to facilitate the *de novo* review of such closure orders that is mandated by their constitutional implications. *In re Washington Post,* 807 F.2d at 391.

■ Here, as indicated, the magistrate's hearing on the intervenors' motion for reconsideration following his initial *sua sponte* closure and sealing orders effectively satisfied the procedural requirements of *In re Knight.* In his order following the hearing, the magistrate gave reasons, supported by findings on the record, for adhering to his prior closure and sealing orders. The most salient of these reasons and findings were these. The "publicity in the national and local press regarding these defendants" as revealed in defendants' evidentiary submissions (most earlier put under seal) "has been pervasive, sensational, inflammatory, and, as a matter of law, prejudicial." This raised two issues: one, "whether the local press coverage has been so different in its scope and nature from the national coverage [presumably, that is, "more prejudicial"] so as to require a change of venue"; and, second, whether the passage of time had diminished the prejudicial effect of some of this publicity. In order to address these issues, the magistrate reasoned that he would have to explore in detail various "specific instances of publicity." This, he further reasoned, would lead unavoidably to further prejudice to defendants if the press were allowed to attend the hearing, whichever way he should decide the change of venue motion. If he granted the motion, the earlier publicity that the press would undoubtedly republish in the course of explaining the reasons for his decision "would follow the Defendants to whichever jurisdiction they were transferred, thus prejudicing potential jurors in that district." If on the other hand he denied the motion because the lapse of time had diminished the prejudicial effect of the original publicity, the inevitable republication by the press of all those items of which the defendants complained would "nullify" the purging effect of time's passage. Faced with what he therefore described as an "untenable situation if the hearing were open to the public and the press," the magistrate concluded that closure was warranted. Adverting to the constitutional test of *Press Enterprise II,* he found that "there is a substantial probability that the Defendants' right to a fair trial will be prejudiced by publicity that closure would prevent." Further noting that he had "carefully considered possible alternatives to closure," he stated that he "[could] conceive of none," and simply discounted without any elaboration the efficacy of the only alternative he identified—jury *voir dire.* He therefore ordered closure, and summarized his reasons as follows:

> [T]he republication of this publicity will serve no useful purpose, will likely cause prejudice or further prejudice to the defendants, will eviscerate the effectiveness of any ruling this Court makes on

the motion, and may impede the ability of any Court to obtain a jury panel that has not been prejudiced by having been subjected, and re-subjected, to the barrage of media coverage of the type contained in Attachment A [appended under seal to the magistrate's order].

To "narrowly tailor" the closure order in obedience to the constitutional requirement, *see Press Enterprise II*, 478 U.S. at 13–14, 106 S.Ct. at 2743, the magistrate provided in the order that he would issue a "public Order" ruling on the change of venue motion, and that "all briefs, exhibits, and tapes and transcripts of [the change of venue] hearing will be unsealed and made available to the public and the press after a jury has been selected in this case." This, he opined, made inapposite any concern about depriving the public of "knowledge of the manner in which matters of public concern are decided in the federal courts," because access would be provided "after a minimal delay."

## IV

As indicated, we review *de novo* the constitutional adjudication on which the magistrate's challenged orders were based. In doing so, we note at the outset that we have not inspected the sealed items of record, save for the items included in Attachment A to the magistrate's ultimate closure order. We have assumed that the items in this Attachment were intended by the magistrate to be illustrative of the most potentially damaging publicity likely to be "republished" if the hearing is not closed. On this basis, we have accepted the magistrate's general factual finding that the local and national publicity regarding the defendants "has been pervasive, sensational, [and] inflammatory." And we accept the magistrate's further assessment that "as a matter of law" (and common sense) it was necessarily "prejudicial," but only in the sense that publicity of this kind is necessarily unfavorable rather than favorable to the general public image of its subjects. The magistrate was obviously in no position, nor did he purport, to be deciding the ultimate question of specific prejudice to fair trial rights on which the change of venue ruling would turn.

Accepting this factual premise, we conclude that the magistrate's ensuing assessment of the constitutional issue was erroneous and his closure order therefore impermissible. This constitutional assessment inevitably involves in the end the exercise of judgment, and we simply disagree with the magistrate's judgment in several ways. Most important, and sufficient to dispose of the matter, we disagree with his threshold assessment that "there is a substantial probability that the Defendants' right to a fair trial will be prejudiced by publicity that closure would prevent."

On the first prong of this assessment we have substantial doubt; on the second, we flatly disagree.

Here we start with the fact that all of the publicity whose exposure in this hearing is the subject of concern is already in the public domain. The question—as the magistrate recognized—is not whether at this point the publicity already out there suffices to require preventive action, but much more narrowly whether its "republication" at this particular time may tip the balance so that preventing this should be attempted. Assessing whether any finite amount of pretrial publicity is damaging enough to warrant concern for fair trial rights is hard enough, assessing whether a discrete bit more would tip the scale probably defies rational prediction. Under the circumstances, it suffices to say that on the question whether the defendant's fair trial right would be decisively prejudiced by republication of portions of publicity earlier put in the public domain, we think that the magistrate's assessment that there is a substantial probability that it would is highly dubious.

Even if the magistrate were justified in thinking that "republication" at this point might well tip the balance, we are satisfied that he was simply wrong in thinking that, as a practical matter, closure could prevent that result. Once the question of prejudice had been raised by the defendants' motion and the closure issue was then raised by intervenors, the "republication" genie was out of the bottle. The magistrate's perception that an open hearing would result in a "barrage" of media coverage and damag-

ing republication of much of the original publicity, and the district judge's assessment that such a hearing would occur in the context of a media "frenzy" may be accepted. But we think it equally sure—with no reproach of the press intended—that any press barrage and frenzy occasioned by an open hearing would be as nothing to the firestorms of purely speculative "republication" that would occur if press access to the hearing is denied. To recognize this is not to capitulate to a press that may be insufficiently concerned with defendants' fair trial rights; it is simply to be realistic about the imperatives under which a free press operates in our constitutional system, and about human nature. Where closure is wholly inefficacious to prevent a perceived harm, that alone suffices to make it constitutionally impermissible. *See, e.g., Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 609–10, 102 S.Ct. 2613, 2621–22, 73 L.Ed.2d 248 (1982). So we believe is the case here.[3]

As indicated, we might stop at this point on the basis that the constitutionally based presumption in favor of open proceedings cannot be overcome when it appears that closure will not to a substantial probability work in any event. We think it appropriate, however, to note two other bases for our disagreement with the magistrate's constitutional assessment.

First, we think it gives much too short shrift to the capability of jury *voir dire* to guard against the potential prejudice of pretrial publicity, including of course any that might be attributable to republications in the interval between original dissemination and trial time. *Voir dire* is of course the preferred safeguard against this particular threat to fair trial rights, *See Wansley v. Slayton,* 487 F.2d 90, 92–93 & n. 9 (4th Cir.1973). Though in particular cases the threat may be so overwhelming that only more drastic measures are adequate, *see Groppi v. Wisconsin,* 400 U.S. 505, 510–11, 91 S.Ct. 490, 493–94, 27 L.Ed.2d 571 (1971), recent experience in a number of nationally publicized trials of widely publicized individuals serves to validate the efficacy of the *voir dire* for this purpose. Cases such as those involving the Watergate defendants, the Abscam defendants, and more recently, John DeLorean, all characterized by massive pretrial media reportage and commentary, nevertheless proceeded to trial with juries which—remarkably in the eyes of many—were satisfactorily disclosed to have been unaffected (indeed, in some instances, blissfully unaware of or untouched) by that publicity. *See, e.g., Columbia Broadcasting Systems, Inc. v. United States District Court,* 729 F.2d 1174, 1181 (9th Cir.1983) (noting, in DeLorean case, evidence of rapid dissipation of pretrial publicity effects in large metropolitan areas); *In re National Broadcasting Co.,* 635 F.2d 945, 953 (2d Cir.1980) (noting in Abscam case that many prospective jurors do not follow news of highly publicized

**3.** In the one other reported decision brought to our attention dealing with the propriety of closure to prevent "republication" of allegedly damaging pretrial publicity a trial judge refused closure of a preliminary hearing precisely on this ground—that it would be wholly ineffectual. In *New York v. Harris,* 6 Med.L.Rptr. 2107 (N.Y.Co.Ct.1980) (the Scarsdale Diet doctor murder case) Judge Leggett summarily rejected the defendants' motion to close because of republication fears. In the judge's words "to close the hearings at this time and under these circumstances would be similar to 'closing the barn door after the horse is gone.'"

The dearth—practical absence—of reported cases dealing with this issue may be instructive in itself. It could well reflect a general perception by those in the best position to assess the likelihood of exacerbating existing damage by republication—criminal defense lawyers—that the danger is not sufficiently real to justify motions to close change of venue proceedings on

that account. The defense lawyer's responsibility is of course to protect his client against the risk of unfair trial because of pretrial publicity. It must be assumed that he has carefully weighed the risk of exacerbating the situation whenever he opens the door to "republication" by moving for a change of venue, obviously with no assurance that it will be granted. When, as here, he does not think it tactically necessary or prudent to seek protection against exacerbation by closure, it must be assumed that he, the person with the greatest responsibility for guarding against the possibility and probably the most reliable intuition in the matter, has discounted it. We cannot of course assume that counsel would be sufficiently irresponsible to both his client and to his ethical obligations deliberately to risk exacerbation in the hope that it might tip the balance when he obviously cannot be confident that it will. Here, it is important to remember, defense counsel did not seek the magistrate's closure order.

prosecutions closely); *United States v. Mitchell*, 551 F.2d 1252, 1262 n. 46 (D.C. Cir.1976), (noting in John Mitchell case that ten of twelve jurors selected in Watergate trial "claimed to have followed Watergate casually, if at all") *rev'd on other grounds sub nom., Nixon v. Warner Communications*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Increasingly the courts are expressing confidence that *voir dire* can serve in almost all cases as a reliable protection against juror bias however induced. *See, e.g., Press–Enterprise II*, 478 U.S. at 15, 106 S.Ct. at 2743; *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 563–64, 96 S.Ct. 2791, 2804–05, 49 L.Ed.2d 683 (1976); *Seattle Times Co. v. United States District Court*, 845 F.2d 1513, 1517–18 (9th Cir.1988); *United States v. Peters*, 754 F.2d 753, 762 (7th Cir.1985); *In re National Broadcasting Co.*, 635 F.2d at 953. With all deference to the magistrate's undoubtedly better vantage point for assessing the local situation, we are satisfied that he seriously undervalued the efficacy of jury *voir dire* as an alternative to the protections that closure might provide here.

Finally, and perhaps most fundamentally, we perceive in the magistrate's assessment a basic misapprehension and undervaluation of the core first amendment value at stake. This is most directly reflected in his perception that public disclosure, immediately after a jury is selected, of the basis for his earlier change of venue ruling and of the proceedings themselves necessarily would protect the right of access asserted by representatives of the press and public. In the magistrate's expressed view, the only effect of his closure order, as so shaped, was a "minimal delay" in access to the materials upon which a judicial decision was made and to the judicial reasoning behind the decision. This unduly minimizes, if it does not entirely overlook, the value of "openness" itself, a value which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure. As the Supreme Court has put it:

The value of openness lies in the fact that people not actually attending [criminal proceedings] can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of [criminal proceedings] and the appearance of fairness so essential to public confidence in the system.

*Press–Enterprise I*, 464 U.S. at 508, 104 S.Ct. at 823. We believe the magistrate failed to appreciate the significance of this underlying first amendment value in making his assessment, and that this contributed to the error we find in the ultimate decision to close the proceeding in issue.

V

For the above reasons, we conclude that the intervening news organizations are entitled to the relief they seek on constitutional grounds. Because we are satisfied that the district court will afford that relief in compliance with this opinion, we think it unnecessary to issue the writ requested.