UNITED STATES of America

v.

Mitchell BYRD.

Cr No. 91–29.

United States District Court,
D. South Carolina,
Rock Hill Division.

Jan. 25, 1993.

Mark C. Moore, Asst. U.S. Atty., Columbia, SC, Mary Gordon Baker, Asst. U.S. Atty., Charleston, SC, for plaintiff.

O.W. Bannister, Jr., Hill, Wyatt & Bannister, Greenville, SC, for defendant.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

The defendant, Mitchell Byrd, pled guilty in this court to a one count of a six count indictment charging him of possessing cocaine with intent to distribute and the court accepted his plea. The government has moved for an order closing a portion of the sentencing hearing. More specifically, the government has proposed that the testimony of a critical witness on a disputed sentencing issue be received at a hearing at which the public and the news media are excluded, with a provision that an expedited redacted transcript be made available to all interested parties following the hearing. When the government's motion was filed, the court issued its February 10, 1992 order setting a hearing on the motion and inviting interested persons and the general public to appear and be heard on this issue.

On March 10, 1992, oral argument was heard on the motion. Two newspapers of general circulation near Byrd's hometown and a representative of the South Carolina Press Association appeared to contest the government's motion. All of the procedural requirements for considering a motion to close the court established by *In re Washington Post Co.*, 807 F.2d 383, 390–92 (4th Cir.1986), were followed. At the conclusion of the hearing, the court denied the government's motion to close a portion of the sentencing hearing. This order memorializes and expands upon the court's ruling.

The present controversy arose in the following manner: Byrd was charged in connection with an extensive undercover operation centering in York County, South Carolina commonly referred to as "Operation Avalanche." The presentence report indicates that federal investigators have received information from an individual who has told them that Byrd attempted to impede the investigation once the undercover operation had been made public. This individual was implicated in the Operation Avalanche drug distribution ring. He was not charged because of his cooperation in this case. The witness allegedly attended a meeting at which Byrd suggested that all potential targets of the investigation should, in effect, maintain their innocence and not concede wrongdoing by any member of the group. The identity of this witness is disclosed in the confidential presentence report and, obviously, is known by

the defendant. If true, the allegations made by the witness would support a two level enhancement to Byrd's offense for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

Byrd vigorously disputes the obstruction of justice allegations. Although the court may consider the hearsay statements made by the witness to the investigator who was interviewed by the probation officer, 18 U.S.C. § 3661 (West 1985); *United States v. Marshall,* 519 F.Supp. 751 (D.C.Wis. 1981), aff'd, 719 F.2d 887 (7th Cir.1982); *United States v. Fatico,* 579 F.2d 707 (2d Cir.1978), the court has determined that on a matter of this magnitude, *viva voce* testimony is essential. The court wishes to hear the direct and cross-examination of this key witness.

The court's determination that live testimony would be required prompted the government's motion to close a portion of the hearing. In its motion, the government indicates that the witness has been granted immunity and that the government has promised that it would "do everything within its power" to keep the witness's name confidential. The government suggests that the witness be allowed to testify in a closed hearing and, at the conclusion of the hearing, an expedited transcript be prepared (with names and other identifying information deleted) and disseminated to the public and the news media. The government argues that such a procedure would constitute but a minimal intrusion on the public's right to know. Indeed, the only aspect of the witness's testimony which would *not* be disclosed would be his identity.

█ To support this motion, the government relies on Fed.R.Crim.P. 32, which provides that the presentence report, or information contained therein, need not be made part of the public record. The government argues that because the presentence report is, by law, confidential, then testimony received to support the disputed issues in the report may be received at a closed hearing. Alternatively, the government argues that the constitutional requirements for closing a hearing, enunciated in *Press–Enterprise*

*v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), have been satisfied in this case. The newspapers disagree and argue that the government has not met the *Press–Enterprise* test.

Initially, the court examined the government's argument that Fed.R.Crim.P. 32 preempts *Press–Enterprise*. Although Rule 32 does allow the court to keep information in the presentence report from becoming part of the public record, the rule does not provide, even inferentially, for a closed sentencing hearing. Moreover, the *Press–Enterprise* test is based on the First Amendment which cannot be circumscribed by an act of Congress. Consequently, the court must focus on the test enunciated by the Supreme Court in *Press–Enterprise*.

I

Does The Right of Access Attach?

█ The first issue to be addressed under *Press–Enterprise* is whether the right of access attaches to this limited portion of the sentencing. *Press–Enterprise,* 478 U.S. at 8–9, 106 S.Ct. at 2740–41. There are two questions the court must answer in determining if the right of access attaches. First, the court must determine whether the sentencing portion of the criminal process has historically been considered as open to the public. *Id.* at 10–11, 106 S.Ct. at 2741–42. It is well settled in our democratic society that the trial of a criminal case must be open to the public. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 573 n. 9, 100 S.Ct. 2814, 2826 n. 9, 65 L.Ed.2d 973 (1980). In addition, the Fourth Circuit has found that sentencing is an essential part of the criminal trial itself. *In re Washington Post Co.,* 807 F.2d at 389. Accordingly, the court finds that sentencing has traditionally been an open part of the criminal process.

█ Second, the court must determine if sentencing is a stage at which public access aids in ensuring the integrity of the entire criminal process. *Press–Enterprise,* 478 U.S. at 11–13, 106 S.Ct. at 2742–43. The focus here is not on actual attendance by the public at sentencings, but rather the

knowledge by the public that, if it so desired, it could attend. *Id.* at 13, 106 S.Ct. at 2743. The public has occasionally viewed sentencing skeptically, with a view that certain privileged defendants receive lighter sentences than others. Thus, the court concludes that sentencing is a stage of the criminal process at which public access will aid in maintaining the integrity and fairness of the process.

Consequently, having answered both questions in the affirmative, the court concludes that the qualified First Amendment right of access applies to the sentencing process.

## II

### Should the Court Be Closed?

■ Once the qualified right of access attaches, there is a presumption that the court should remain open. In order to overcome this presumption, the government is required to meet each prong of a three-part test: (1) the government's interest must be compelling, (2) the closure must serve that compelling interest, and (3) the specific method of closure must be narrowly tailored to serve the compelling interest. *Press–Enterprise*, 478 U.S. at 15, 106 S.Ct. at 2743.

■ The interest asserted by the government in this case is the potential embarrassment and loss of employment that the witness may suffer. There are no allegations that the witness has been threatened physically or otherwise. The testimony would involve only the witness's relationship with the defendant. Thus, any embarrassment or vocational detriment would be a direct result of the informant's own conduct. The court finds that the government has failed to present a sufficiently compelling interest to justify closing the courtroom. Because the government has not satisfied the first part of the test, the court does not reach the remaining two prongs. Accordingly the government's motion to close the courtroom is denied. The sentencing hearing will not be scheduled until the time within which the government may appeal this order has expired.

IT IS SO ORDERED.