Greg **RUSHFORD**, Plaintiff–Appellant,

**The Washington Post Company, Intervenor,**

v.

The **NEW YORKER MAGAZINE, INC.,** Defendant–Appellee,

and

**William Shawn; Reneta Adler, Defendants.**

**No. 87–1617.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 2, 1988.

Decided May 6, 1988.

Greg Rushford, Washington, D.C., for plaintiff-appellant.

David Evan Kendall, Washington, D.C., for intervenor.

Roslyn Ann Mazer, Washington, D.C. (Cyril V. Smith, Dickstein, Shapiro & Morin, Washington, D.C., on brief) for defendant-appellee.

Before HALL, PHILLIPS, and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

This is a case in which Greg Rushford, the plaintiff, appeals from an adverse grant of summary judgment with regard to his defamation claim brought against The New Yorker Magazine, Inc. (The New Yorker). The Washington Post Company (The Washington Post) has intervened, seeking to unseal the pleadings and documents accompanying the successful Motion for Summary Judgment submitted by The New Yorker to the district court.

Because the allegedly defamatory statements are protected under a qualified privilege, we affirm the grant of summary judgment against Rushford. During pretrial discovery, a Protective Order covering six documents was issued. When The New Yorker moved for summary judgment, the entire record accompanying the summary judgment motion was placed under seal. Only three documents in that record were

covered by the Protective Order.[1] The New Yorker acknowledged in argument before this Court that it has no objection to unsealing the documents not covered by the Order. We therefore hereby unseal the summary judgment pleadings and accompanying exhibits except for the three documents specifically covered by the Order. With regard to those three documents, the case is remanded to the district court for the determination, which heretofore has never been judicially made, of whether the Protective Order should be enforced.[2]

## I.

On October 29, 1986, Rushford brought a libel action against, *inter alia*, The New Yorker in the Circuit Court for Fairfax County, Virginia. The case was thence removed to the United States District Court for the Eastern District of Virginia, pursuant to 28 U.S.C. § 1441.

The New Yorker had published a two-part article by Renata Adler, entitled "Annals of Law—Two Trials," in June, 1986. The article reported on two separate libel suits brought by General William C. Westmoreland and Israeli General Ariel Sharon, respectively. The article referred to Rushford's testimony as a witness for CBS in *Westmoreland v. CBS, Inc.*, No. 82 Civ. 7913 (S.D.N.Y.) (PNL).

On December 23, 1986, Rushford served a document request on The New Yorker under Fed.R.Civ.P. 34. However, The New Yorker declined to produce several categories of documents without a protective order. Rushford thereafter moved to compel the production of the documents. The New Yorker opposed the motion and moved for a protective order pursuant to Fed.R.Civ.P. 26(c) that would allow limited disclosure of the documents to Rushford and his counsel, but would forbid any other disclosure of the pertinent documents prior to trial. On March 9, 1987, Magistrate Grimsley ruled that a protective order should be issued. On March 20, 1987, Magistrate Brinkema entered a Protective Order:

The documents are to be shown only to the respective parties, their counsel and those assisting counsel, and are to be used solely for this litigation. No copies of these documents are to be made without leave of court. When this litigation is completed, the documents are to be returned to the party supplying them.

The Order covered the following documents:

1. Proposed "Note to Readers" drafted by William Shawn (never published);
2. Transcript of deposition of William Shawn, dated February 18, 1987;
3. Galleys and page proofs of the paragraph referring to Rushford in "Annals of Law—Two Trials";
4. The New Yorker's written instructions or guidelines to fact checkers;
5. The New Yorker's internal telephone directories;
6. Rushford's tax returns.

Rushford filed a "Partial Objection" to the Magistrate's Protective Order, asserting, *inter alia*, that he had a First Amendment right to disseminate the pertinent documents. Following a hearing, Chief Judge Bryan sustained the Magistrate's ruling in an order issued on March 17, 1987.

On April 7, 1987, The New Yorker filed a Motion for Summary Judgment. It filed all its summary judgment papers under seal even though the Protective Order did not explicitly apply to pleadings. The New Yorker alleges that Judge Bryan had "instructed [The New Yorker] to place the motion and accompanying exhibits under seal." Following oral argument, Judge

---

1. Transcript of deposition of William Shawn, dated February 18, 1987 (Appellee's attachments to the Summary Judgment Motion, Vol. 1, Exhibits 3), Galleys and page proofs of the paragraph referring to Rushford in "Annals of Law —Two Trials" (Appellee's Attachments to the Summary Judgment Motion, Vol. 1, Exhibit 6); Proposed "Note to Readers" drafted by William Shawn (Appellant's Opposition to the Summary Judgment Motion, Exhibit 12).

2. Because The Washington Post only seeks to unseal the documents that were submitted as attachments to the motion for summary judgment, the issue of whether the other three documents covered by the Protective Order should be unsealed is not before this Court.

Bryan granted The New Yorker's Motion for Summary Judgment on April 28, 1987.

On September 30, 1987 and after an appeal from the grant of summary judgment had been filed by Rushford, The Washington Post filed a motion for leave to intervene before this Court for the limited purpose of unsealing the summary judgment pleadings that formed the basis for Judge Bryan's April 28, 1987 ruling. On November 25, 1987, we granted The Washington Post's motion for leave to intervene as a party appellant for that limited purpose.

## II.

We will first discuss the issue raised by The Washington Post of whether the pleadings and accompanying exhibits that were submitted to the district court should be unsealed for public inspection.

■ The New Yorker asserts that it filed the summary judgment pleadings under seal because it was instructed to do so by Chief Judge Bryan's chambers. While we question whether Judge Bryan's "instructions" regarding pleadings could be considered as a protective order pursuant to Fed.R.Civ.P. 26(c), we need not reach that issue here. At the oral argument, counsel for The New Yorker conceded that her client was willing to turn over to The Washington Post all pleadings and exhibits that were not under the March 20, 1987 Protective Order. Because of such a concession, we see no reason to keep those documents under seal.

With regard to the three documents that were specifically covered under the March 20, 1987 Protective Order,[3] we question whether the Order remained in effect over these documents once they were submitted to the court below as attachments to a summary judgment motion. It appears from the record that the Order was entered to facilitate pre-trial discovery. Once the documents are made part of a dispositive motion, such as a summary judgment motion, they "lose their status of being 'raw fruits of discovery.'" *In re "Agent Or-*

*ange" Product Liability Litigation,* 98 F.R.D. 539, 544–45 (E.D.N.Y.1983).

■ We find The New Yorker's reliance on *Seattle Times v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) to be unpersuasive. In *Seattle Times,* the Supreme Court merely held that the First Amendment did not preclude the district court from entering a protective order limiting disclosure of the products of pretrial discovery. *Id.* at 37, 104 S.Ct. at 2209. However, such discovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court. *See Bank of America Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.,* 800 F.2d 339, 343 (3d Cir.1986). The counsel for The New Yorker even acknowledged that if the case had gone to trial and the documents were thereby submitted to the court as evidence, such documents would have been revealed to the public and not protected under the Order. Because summary judgment adjudicates substantive rights and serves as a substitute for a trial, we fail to see the difference between a trial and the situation before us now. *See Anderson v. Cryovac, Inc.,* 805 F.2d 1, 13 (1st Cir.1986) (recognizing that documents submitted as a part of motions for summary judgment are subject to public right of access); *In re Continental Illinois Sec. Litig.,* 732 F.2d 1302, 1308–10 (7th Cir.1984) (presumption of public right of access applies to motion to terminate derivative claims); *Joy v. North,* 692 F.2d 880, 893 (2d Cir.1982) ("documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons"); *cf. In re Washington Post Co.,* 807 F.2d 383, 389 (4th Cir.1986) (because the taking of a guilty plea serves as a substitute for a trial, it may reasonably be treated in the same manner as a trial for First Amendment purposes). Therefore, without some overriding interests in favor of keeping the discovery documents under seal, even the three documents should be unsealed.

---

**3.** *See supra* note 1.

■ We certainly recognize that there may be instances in which discovery materials should be kept under seal even after they are made part of a dispositive motion. The mere existence of a First Amendment right of access or of a common law right of access to a particular kind of document does not entitled the press and the public to access in every case. *See In re Washington Post Co.*, 807 F.2d at 390. In order for The New Yorker to invoke such a judicial protection, however, the district court must address the question at the time it grants a summary judgment motion and not merely allow continued effect to a pretrial discovery protective order. The district court must comply, not only with certain procedural requirements, but also with certain substantive requirements.

■ With regard to substantive requirements, we find it necessary to decide whether the interests of The Washington Post arise from the First Amendment or from the common law right of access. The common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment. Under common law, there is a presumption of access accorded to judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978). This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access. The trial court may weigh "the interests advanced by the parties in light of the public interests and the duty of the courts." *Id.* at 602, 98 S.Ct. at 1314. The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption. *Hotel Rittenhouse Assoc.*, 800 F.2d at 344. The trial court's denial of access to documents is then reviewed only for abuse of discretion. *Nixon*, 435 U.S. at 597–99, 98 S.Ct. at 1311–12.

■ Under the First Amendment, on the other hand, the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest. *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed. 2d 248 (1982); *In re Washington Post Co.*, 807 F.2d at 390. In *In re Washington Post Co.*, this Court held that the more rigorous First Amendment standard should apply to documents filed in connection with plea hearings and sentencing hearings in criminal cases. 807 F.2d at 390. We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case. *See Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1067–71 (3d Cir.1984) (the First Amendment guarantees to the public and to the press the right of access to criminal and civil trials); *In re Continental Illinois Sec. Litig.*, 732 F.2d at 1308 (the policy reasons for granting public access to criminal proceedings apply to civil cases as well).[4] Therefore, to limit The Washington Post's access to the documents submitted in connection with the summary judgment motion, there must be a showing, in the first instance by the district court, that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest. *See Globe Newspaper Co.*, 457 U.S. at 606–07, 102 S.Ct. at 2619–20; *Publicker Industries, Inc.*, 733 F.2d at 1070.

■ In making that determination, the district court must follow the procedural requirements as laid out in *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir.1984). *See In re Washington Post Co.*, 807 F.2d at 390. First, the district court must give the public adequate notice that the sealing of documents may be ordered. *In re Knight Publishing Co.*, 743 F.2d at 234. Second, the district court must provide in-

---

**4.** While cautioning that the question of whether the public has a right of access to civil trials was not before the Court, Chief Justice Burger nevertheless noted "that historically both civil and criminal trials have been presumptively open." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 2829 n. 17, 65 L.Ed.2d 973 (1980).

terested persons "an opportunity to object to the request before the court ma[kes] its decision." *Id.* at 235. Third, if the district court decides to close a hearing or seal documents, "it must state its reasons on the record, supported by specific findings." *Id.* at 234. Finally, the court must state its reasons for rejecting alternatives to closure. *Id.* at 235.

In the instant case, the district court never had the opportunity to consider, in compliance with *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir.1984), whether the sealing of the documents should continue even after the disposition of the case by the granting of a summary judgment. The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents. We, therefore, remand the case to the district court for such a determination.

### III.

We now turn to the merits of the underlying libel claim that was brought by Rushford against The New Yorker. Rushford argues that he was defamed by the following language in Adler's article. He objects particularly to the three italicized sentences.

> The first problem was presented more acutely by another witness, Greg Rushford, for eight months an investigator for the Pike Committee, and a devout believer in Adams. On direct examination by Boies, Rushford seemed an effective witness on CBS's and Adams' behalf, telling what he had said, during the making of the broadcast, to Adams and to Crile. *On cross-examination, however, by Dorsen (over heavy objections by Boies), he began alluding, with a kind of dark ebullience, to a "larger web" (which Judge Leval subsequently called a "wider conspiracy"), which seemed to include among the conspirators virtually everyone. In the first bench conference, which Boies requested to state his objections to Dorsen's mild inquiries into Rushford's real beliefs,*

*Judge Leval remarked that "Adams and Crile, or somebody at CBS" might have had reason to regard Rushford as "far out." A bit later, in response to further objections, the judge put it more forthrightly, in ruling that Dorsen's questions were simply directed to what was told to Adams and Crile, and "not simply to exploring this witness's views to show that he's a kook."* That was the first, or "larger web," problem: that Adams' conspiracy-to-suppress theory had always extended, before "The Uncounted Enemy: A Vietnam Deception," to officials higher than Westmoreland, including (in direct contradiction to the program's central thesis) President Johnson and the Joint Chiefs. Westmoreland could hardly have conspired to deceive his military and civilian superiors in a deceit in which they were his co-conspirators.

Rushford basically complains that these three sentences suggest that, in the personal opinion of Judge Leval, Rushford was a "kook" or "far out."

▮ At common law, pursuant to a special privilege, republications of reports of judicial proceedings are not subject to liability unless the privilege is abused. *Alexandria Gazette Corp. v. West*, 198 Va. 154, 159–60, 93 S.E.2d 274, 279 (1956); *Restatement (Second) of Torts* § 611. The only requirements that must be met in order to avoid liability are properly to attribute the report to the original source and to ascertain that the republication is accurate and complete or a fair abridgement of the official report. *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 739 (D.C.Cir. 1985), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2247, 90 L.Ed. 693 (1986).

▮ All three sentences being challenged by Rushford quote directly, at least in part, from the Westmoreland trial transcript. Rushford argues, however, that those quotes are taken out of context and are not protected under the privilege. We disagree. The privilege does not require that the published report be verbatim of the official report but it must only be substantially correct. *Alexandria Gazette*

*Corp.*, 198 Va. at 160, 93 S.E.2d at 279. As the district court noted, while the references to the order of events may not be entirely accurate, the quoted portions of the sentences are accurate quotes and the sentences themselves are substantially correct accounts of the trial testimony. Though a showing of actual malice by clear and convincing evidence could overcome privilege, *see The Gazette, Inc. v. Harris,* 229 Va. 1, 18, 325 S.E.2d 713, 727 (1985), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 (1985), there is nothing in the record before us from which we could infer malice. Therefore, the qualified privilege applies and the summary judgment in favor of The New Yorker is hereby affirmed.

AFFIRMED IN PART, REMANDED IN PART.