**In re Judy Lynn VANCE, Debtor.**

**Bankruptcy No. 7–94–02510–HPA–7.**

United States Bankruptcy Court,
W.D. Virginia,
Abingdon Division.

Jan. 5, 1995.

James P. Carmody, Richlands, VA, for debtor.

Thomas W. Kennedy, Asst. U.S. Trustee, Roanoke, VA, for U.S. Trustee, Region Four.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

This Court, on December 14, 1994, entered its Order on Debtor's Motion to the Court, by counsel, that the section 341 meeting scheduled for December 16, 1994, be continued to allow appropriate service and notice to creditors of the yet-to-be-filed plan, when filed. An Appeal of this Order has now been taken by the U.S. Trustee's Office, apparently under the premise and theory that the Court had no authority to enter the Order. In order that the appeal process will not be considered in a vacuum, the Court feels it is necessary to file this Memorandum Opinion as a supplement to the said Order.

The Debtor, on November 14, 1994, filed her Chapter 13 petition in this Court. The Debtor did not attach and file, as may be done under the Rules, the schedules or a plan at the time the petition was filed. Thereafter, on December 5, 1994, the Court entered an Order directing the Debtor to file schedules and a plan within ten (10) days from said date or by December 15, 1994. On December 13, 1994, the clerk received the motion directed to the Court requesting a continuance of the section 341 meeting which motion was prepared by Debtor's counsel and certified to all creditors and interested parties on December 12, 1994. The section 341 meeting was scheduled for December 16,

1994 at the Abingdon Division of this Court. The Debtor resides at Doran, Tazewell County, Virginia, and counsel for the Debtor has offices in Tazewell, Virginia, a distance of 75 miles or 150 miles for round trip from the Town of Abingdon.

The schedules have now been filed and, in addition thereto, a Motion to Convert the Chapter 13 case to a Chapter 7 was filed and, by Order entered by this Court on December 21, 1994, the case was converted to Chapter 7 thereby requiring the scheduling of a new section 341 meeting. Since the case is now converted to Chapter 7, the Appeal of the Court's Order of December 14, 1994, would appear to be moot; however, in the event it is decided that the Appeal is not moot, the Court proceeds to review authorities and the reasoning for the Order.

By way of review, when a Chapter 13 case is filed in this Court, a notice goes forth by the clerk to all creditors and interested parties that a section 341 creditors' meeting will be held as scheduled on a date and place fixed in the notice; and, further, that thereafter a confirmation hearing will be held before the Court on a date, time, and place fixed in the notice. In the case at bench, the Debtor directed a motion to this Court that the section 341 meeting be continued since the schedules and plan were in the process of being filed. The motion implied that the section 341 meeting could not be held as scheduled; and, apparently, the motion was to avoid the necessity of Debtor's counsel and the Debtor, who would lose a day's work, from traveling the 150 miles to Abingdon and return to attend the meeting. Counsel directed his motion to the Court to enable the Court to enter an appropriate order continuing the meeting and avoid the expense and inconvenience to counsel and the Debtor of having to attend a section 341 meeting which should have been continued by order of the Court.

If, in fact, the U.S. Trustee's position is that this Court had no authority to enter this Order, the question arises as to the interpretation of the Code establishing the U.S. Trustee system. In a well-reasoned and scholarly decision, the United States District Court for the District of Maryland in the case of *In re Astri Investment, etc.,* 88 B.R. 730 (D.Md.1988), held that a creditors' meeting is a statutory activity which is under the supervision and jurisdiction of this Court and the fact that the U.S. Trustee or panel trustee representing the U.S. Trustee's Office conducts same does not change the essential judicial character of a section 341 meeting. It is, therefore, imperative and appropriate that this Court have jurisdiction over section 341 meetings, their scheduling, continuances, and so forth, if necessary.

The facts here present a troublesome issue. If Debtor's counsel in this case and the Debtor had appeared at the section 341 meeting as scheduled and the person representing the U.S. Trustee's Office declined to continue the section 341 meeting in which the Debtor is not ready to proceed because the Debtor does not have finalized schedules and plan, for whatever reason, to be considered by creditors, where does counsel seek redress? Is the debtor helpless? Must the debtor attend another section 341 meeting losing another day's work with additional expense of her counsel simply because this Court is presumed not to have jurisdiction to enter an order directing that a section 341 meeting be continued? Such is preposterous, unthinkable, and could never have been intended by the Congress of the United States in enacting the 1978 Code. The legislative history clearly reflects that the only reason for the section 341 procedure was to relieve the judge from the awkward position of presiding over meetings of creditors and, thereafter, having to hear and decide cases flowing therefrom.

In the *Astri* case, Judge Kaufman, at page 736, stated, by way of historical background with bankruptcy jurisprudence, the following:

A bankruptcy case is a civil proceeding conducted under the supervision of the district court. 28 U.S.C. § 1334(a) gives to the district courts original and exclusive jurisdiction over *"all* cases arising under title 11" (emphasis added); § 1334(b) gives to the district courts original, but not exclusive, jurisdiction over "all civil proceedings in cases arising under title 11, or arising in or related to cases under title 11." A bankruptcy "case" commences with

the filing of a bankruptcy petition; a bankruptcy "proceeding" includes any event in the bankruptcy case. *See 1 Collier on Bankruptcy,* ¶ 3.01[c][i] and [ii] (15th ed. 1987).

Astri argues that this Court should view a creditors' meeting as the equivalent of a discovery proceeding in a civil trial. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). That contention is not persuasive. In *Rushford [v. New Yorker Magazine, Inc.,* 846 F.2d 249] [ (4th Cir.1988) ], the Fourth Circuit was asked by the party opposing unsealing of certain summary judgment documents to rely upon *Seattle Times.* Rejecting that approach, Judge Murnaghan concluded:

> We find The New Yorker's reliance on *Seattle Times v. Rhinehart,* 467 U.S. 20 [104 S.Ct. 2199, 81 L.Ed.2d 17] (1984) to be unpersuasive. In *Seattle Times,* the Supreme Court merely held that the First Amendment did not preclude the district court from entering a protective order limiting disclosure of the products of pretrial discovery. *Id.* at 37 [104 S.Ct. at 2209]. However, such discovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court. *See Bank of American [America ] Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.,* 800 F.2d 339, 343 (3d Cir.1986). The counsel for The New Yorker even acknowledged that if the case had gone to trial and the documents were thereby submitted to the court as evidence, such documents would have been revealed to the public and not protected under the Order. Because summary judgment adjudicates substantive rights and serves as a substitute for a trial, we fail to see the difference between a trial and the situation before us now. 846 F.2d at 252.

Insofar as *Seattle Times* is concerned, it is also necessary to note that while both discovery and a creditors' meeting are primarily concerned with obtaining information, the two proceedings have much different historical backgrounds. Discovery is a pretrial process conducted principally by the parties with varying degrees of court supervision; a creditors' meeting is a formal part of a Chapter 7 bankruptcy, mandated by 11 U.S.C. § 341(a), supervised by a court clerk, and a proceeding at which substantive rights of creditors are often affected.

Judge Kaufman noted in the foregoing that the section 341 meeting was an integral part of the bankruptcy process, the proceedings therein being subject to the jurisdiction of this Court. Even though the decision dealt with exclusion of the press, the decision clearly deals with the supervisory authority of the Court concerning creditors' meetings conducted in cases over which this Court presides.

Judge Kaufman further traced the historical steps of the bankruptcy process over the centuries to the present Code, which now governs this Court, thusly:

> American bankruptcy law is firmly rooted in English soil, as Justice Holmes noted in 1911 when he wrote that "[w]e take our bankruptcy system from England, and we naturally assume that the fundamental principles upon which it was administered were adopted by us when we copied the system." *Sexton v. Dreyfus,* 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911). The first English bankruptcy statute was enacted in 1542, during the reign of Henry VIII, and gave to the Lord Chancellor of England and other members of the Privy Council the power to summon for examination persons indebted to, or holding property owned by, the bankrupt. *See* 34 and 35 Hen. VIII, ch. 4 (1542–43), *quoted in* 1 H. Remington, *A Treatise on the Bankruptcy Law of the United States* 9–10 (2d ed. 1915). That first statute was "concerned wholly with fraudulent debtors, not at all with those who are simply unfortunate," Remington, *supra,* at 8, and was quasi-criminal in nature. The purpose of the examination of witnesses was to uncover all of the assets of the bankrupt for distribution to creditors. Unfortunately, historical research to date does not seem to have revealed whether the examination

of witnesses was or was not conducted in public; there is, however, no indication that the general openness of criminal and civil proceedings in English legal practice was dispensed with in connection with bankruptcy matters.

It was not until 1869 that the debtor became subject in England to examination. Under the 1869 statute, the bankrupt was required to "produce a statement of his affairs to the first meeting of creditors, and submit to be publicly examined thereon on a day to be named by the court, and at such adjourned public examination as the court may direct." G. Robson, *A Treatise of the Law of Bankruptcy* 447 (1870). The 1869 law also called for the examination of the bankrupt to be conducted in open court, not in chambers. *Id.* at 448. Section 17 of that Act provided that the court hold a "public sitting" at which the debtor "shall be examined as to his conduct, dealings, and property." Bankruptcy Act of 1869 § 17, *quoted in* W. Hazlitt & R. Ringwood, *The Bankruptcy Act of 1883 and the Bankruptcy Rules and Forms, 1886,* 18 (2d ed. 1887). Public examination of the debtor has continued into modern times as a feature of English bankruptcy law. "The public examination had traditionally been regarded [in England] as one of the most important aspects of the bankruptcy process, for it is intended to serve one of the main purposes of public policy associated with bankruptcy law, namely the protection of the public by gathering as much information as possible about the debtor and his affairs." I. Fletcher, *Laws of Bankruptcy,* 111 (1978). It is to be noted, however, that in Great Britain the practice of public examination of the bankrupt developed separately from the procedure concerning creditors' meetings. The former was always open to the public; the historical record available to us is largely silent regarding public access to the latter. (footnote omitted)

> The American colonies apparently never had any laws that could technically be called bankruptcy laws. Pennsylvania, however, had passed "an act for the Regulation of Bankruptcies" in 1785. In addition, Pennsylvania, like most of the other states, had insolvency laws. These laws were not uniform; nor did they furnish adequate coverage.... It was inevitable that Congress would be called upon to exercise its legislative power over the subject of bankruptcies.

1 *Collier on Bankruptcy* ¶ 0.03 (14th ed. 1974). American federal bankruptcy law was first established by the Bankruptcy Act of 1800, and was reestablished and developed by the Acts of 1841, 1867, 1898, 1935 and 1978. Section 18 of the Act of 1800 required the bankrupt to appear and to be examined by a commissioner appointed by the district court to oversee the bankrupt's assets. Section 52 of the Act permitted "any creditor" to attend the court examinations of the bankrupt and to participate in the proceedings. (footnotes omitted).

The Act of 1841 provided for examination of the bankrupt "in and before [the court], or any commission appointed by the court therefor." The Act also stated that after a hearing had been scheduled with regard to a petition for bankruptcy, "all persons interested may appear at the time and place where the hearing is thus to be had, and show cause, if any they have, why the prayer of the said petitioner should not be granted." (footnotes omitted)

The first three Bankruptcy Acts were short-lived. The Act of 1800 was repealed in 1803; the Act of 1841 was repealed in 1843; and the Act of 1867 was repealed in 1878. The Bankruptcy Act of 1898, however, established the foundations of modern bankruptcy law. Section 55(a) of the 1898 Act gave to each federal district court the responsibility to "cause the first meeting of the creditors of a bankrupt to be held" and § 55(b) required the judge or referee to preside, and gave to either officer the discretion to "publicly examine the bankrupt." (footnotes omitted)

The Act of 1898 contains the first statutory reference to a "public" examination of the bankrupt. The sixth edition of *Collier on Bankruptcy* noted "[t]hat all meetings [under Section 55] should be held in courtrooms and on regular days and at regular hours, and be conducted with dispatch,

dignity and impartiality on the part of the presiding officer, in short, as a court of justice, seems to be the purpose of the statute." *Collier on Bankruptcy* 419 (6th ed. 1907) (footnotes omitted).

The Act of 1938 amended § 55(b) to *require* that the judge or referee "publicly examine the bankrupt or cause him to be examined and [to provide that the judge or referee] may permit creditors to examine him [the .bankrupt]." (footnote omitted)

Section 55 of the Act, as amended in 1938, should be read in tandem with § 21(a) of the 1898 Act, which permitted the court, upon the application of any officer, bankrupt or creditor, to order *any* designated persons to appear before the court for examination regarding the bankrupt's assets during *any* stage of the proceeding. Section 21(a) specifically authorized examination of the bankrupt. In *In re Winston Shirt Corp.*, 104 F.2d 777, 780 (3d Cir.1939), the issue was whether a creditor was entitled to receive a copy of the testimony of a witness taken at a § 21(a) hearing. In deciding that the creditor was so entitled, Judge Biggs wrote:

> Moreover, we entertain no doubt that the examination of witnesses pursuant to the provisions of Section 21(a) of the Bankruptcy Act must take place at a public hearing.
>
> Such is the case because the referee in conducting the hearings serves as the court and the processes of the court are available to compel the attendance and testimony of witnesses. Such hearings cannot be conducted in camera. Counsel for interested persons are entitled to examine the proceedings. Under circumstances similar to those of the case at bar, it has been held that a creditor or even the bankrupt himself is entitled to examine the testimony given at hearings as well as books and records in the possession of the trustee.

*Id. See, e.g., Petition of Moulthrop*, 249 F. 468 (6th Cir.1918); *In re Samuelsohn*, 174 F. 911 (W.D.N.Y.1909); *In re Saur*, 122 F. 101 (S.D.N.Y.1903). (footnote omitted)

In *In re Prussian*, 255 F. 857 (D.Mich. 1919), the referee had excluded from a § 21(a) proceeding involving the examination of a creditor an attorney who represented both that creditor and the bankrupt. Commenting upon the referee's suggestion that the presence of the attorney would be improper, the district court wrote, inter alia:

> The contention really amounts to this, that the examination provided by section 21(a) should be held to be a secret inquisition, at which only certain persons may be present. Aside from the inherent difficulty in determining just who might not attend such examination, it is not clear by what authority a trustee in bankruptcy, or even the referee or court, could convert this bankruptcy proceeding, held in a court, with witnesses sworn and testifying, subject to examination and cross-examination in conformity with the rules of law, into a secret session at which certain parties, having rights which may be affected by the questions asked or the answers given at the hearing, may be compelled to attend, but from which their counsel, and other parties having rights involved in such proceeding, together with their counsel, may be excluded. Counsel have not pointed out any provision in the Bankruptcy Act justifying such a construction of the statute or rules applicable, and I know of none. The provisions already mentioned seem to clearly indicate that a contrary construction is the proper one.

*Id.* at 859–60. *See 2 Collier on Bankruptcy,* ¶ 21.2 (14th ed. 1978) ("Despite intimations to the contrary, a § 21(a) examination should be conducted at a *public* hearing, and not as a private investigation."); 5 Remington, *supra,* at 59–61 ("Examinations under § 21(a) are not secret inquisitions at which only certain persons may be present, but are *public* proceedings.") (emphasis added).

While both § 21(a) and § 55(b) are very similar in that they provide for examination of the bankrupt, some courts have emphasized that § 21(a) is essentially a discovery proceeding whereas in the

§ 55(b) proceeding the rights of creditors may be affected.

Thus, in *In re Emigh,* 243 F. 988 (N.D.N.Y.1917), the court wrote:

At the first meeting of creditors, of which all creditors have notice ... and at all adjournments thereof, the bankrupt may be examined. Witnesses may be examined and proof taken as to claims. *These proceedings should be open to the public,* and the bankrupt is then and there entitled to counsel. While the witnesses are publicly sworn and examined at such a meeting, they are not entitled to counsel, except when in the discretion of the referee or court counsel ought to be permitted. But special examination of the bankrupt and of his wife and of witnesses under special order pursuant to the provisions of section 21(a) are a different matter, and are had for a different purpose. The two proceedings should not be confused or conducted the one as a part of the other. These special examinations, while a proceeding in the case before the referee or judge, are not a part of the open court proceedings proper and ought not to be. If so conducted the object and purpose of such examination will be defeated. *Id.* at 991. (emphasis added).

At this juncture of this case, the court is not called upon to agree or disagree with the distinction between sections 55(b) and 21(a) drawn by the Court in *In re Emigh,* and simply notes that the court's views in that case with respect to section 55(b) support the media's position in this case.

Congress revised the entire bankruptcy law when it enacted the Bankruptcy Reform Act of 1978. In that Act, meetings of creditors are addressed at 11 U.S.C. § 341, which provides:

(a) Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.

(b) The United States trustee may convene a meeting of any equity security holders.

(c) The court may not preside at, and may not attend, any meeting under this section including any final meeting of creditors.

*The removal of the court from the role of presiding at or attending creditors' meetings constituted a major renovation and reflected a policy change designed "to remove the court from administrative matters and to end its involvement in situations in which the court learns information outside of the context of a dispute on which it may eventually rule." 2 Collier on Bankruptcy,* ¶ 341.01[3] (15th ed. 1988). *However, the fact that a United States trustee now presides at creditors' meetings does not change the essentially judicial character of the proceedings; nor did the Congress give any indication in enacting the 1978 law that it sought to change any historical practice relating to public access.* (emphasis added)

Section 343 of the 1978 Act continues the practice of requiring the debtor to "appear and submit to examination under oath at the meeting of creditors." 11 U.S.C. § 343. Section 343 is the successor to § 55(b) of the prior Act; the most significant difference between the two sections for purposes of this case is the absence in section 343 of any reference to a public examination of the debtor. Again, however, it must be noted that there is no indication in the legislative history that that wording change was intended to alter historical practices concerning public access to creditors' meetings. (footnote omitted)

Since 1800, our federal bankruptcy proceedings have always been conducted under the aegis of a federal court. Also, the bankruptcy statutes have required that records of such proceedings be filed with the clerk of the district court. Current Bankruptcy Rule 2003 requires the electronic taping of testimony at creditors' meetings and provides that such tapes are part of the public record and are available for transcription upon order of a member of the public. The trustee's memorandum regarding the creditors' meeting is also filed in the court records and is available for public review. Thus, a member of the public, including a representative of the press, may have access to the transcript

and records of a creditors' meeting. In that context, it would seem that a member of the public, including a member of the press, should also have the right to attend a creditors' meeting unless problems of disruption or the like are likely to occur. The likelihood of the occurrence of such problems would appear slight, and further would seem to be as controllable as in any other court proceeding. Indeed, the press has attended, apparently without any disruptive effects, meetings of creditors in certain major bankruptcies in the District of Maryland and elsewhere in the Fourth Circuit. See e.g., In re Governmental Financial Services, Inc., No. 87–4–3357 (Bankr.D.Md.); *In re A.H. Robins Co., Inc.,* No. 85–01307–R (Bankr.E.D.Va.); *In re PTL (Heritage Village Church and Missionary Fellowship, Inc.),* No. 87–01956 (Bankr.D.S.C.). In sum, historical analysis of English and American practices would appear to support the media's position in connection with the issue posed by this case. (footnotes omitted)

### C. Function and Policy

The second prong of the Supreme Court's experience and logic analysis is whether access by the public and press to the proceedings plays a significant role in the functioning of the bankruptcy process. *See Press Enterprise II,* [*Press Enterprise Co. v. Superior Court* ], 478 U.S. [1] at 8–9, 106 S.Ct. [2735] at 2740–41 [92 L.Ed.2d 1] [ (1986) ]. A policy of openness " 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the [criminal law] system.' " *Id.* at 13, 106 S.Ct. at 2743 (quoting *Press Enterprise I* [*Press Enterprise Co. v. Superior Court* ], 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629 (1984)). Similarly, unless creditors' meetings are open, members of the public including the press have no way to monitor the supervision of the case by the trustee or to assure that bankruptcy policies and procedures are applied appropriately. As the Supreme Court has noted, "[p]eople in an open society do not demand infallibility from their institutions but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers* [*v. Virginia* ], 448 U.S. [555] at 572, 100 S.Ct. [2814] at 2825 [65 L.Ed.2d 973] [ (1980) ].

The meeting of creditors is an important part of a bankruptcy case—indeed, in Chapter 7 and 11 proceedings, it is the only mandatory hearing. Creditors have an opportunity to appear and to present claims, to examine the debtor, and to participate in discussions regarding the outcome of the bankruptcy. *Cf. Press–Enterprise II,* 478 U.S. at 12, 106 S.Ct. at 2742 ("Because of its extensive scope, the preliminary hearing is often the final and most important step in the criminal proceeding"). The public has an interest in attending such a critical component of a bankruptcy, particularly in a case like this one in which the debtor is a corporation whose bankruptcy affects large numbers of people, indirectly as well as directly. Astri, the bankrupt in this case, is a securities dealer-broker, a type of business which has been under intense federal and state scrutiny for a number of years. (footnote omitted)

One purpose of the examination of the debtor at a creditors' meeting has always been to uncover all of the debtor's assets, by the obtaining of full and truthful information. Truthfulness by the bankrupt is probably enhanced when the bankrupt testifies in public. In addition, openness will seemingly increase the likelihood that all potential creditors are made aware of the bankruptcy proceedings and are afforded the opportunity to present claims. (footnote omitted)

In passing, it would appear that this is a continuing effort on the part of the Department of Justice through the U.S. Trustee's system to exclude from this Court any jurisdiction whatsoever over the section 341 meetings or the manner in which they are conducted. It appears to be the thesis that this Court has no authority over the rights and protective procedures that a debtor may have in the conduct of such meetings. Further, the ill-advised Virginia State Bar ruling, which the U.S. Trustee's Office obtained, has used, and now implements, permits lay per-

sons, corporate, credit managers, and bank employees to appear at section 341 meetings and examine the debtor under oath, which degrades the judicial process and is bringing disrepute upon this Court and the entire judicial system relating to bankruptcy matters.[1] This Court has heard debtors testify in their appearances as witnesses before this Court, that while testifying at section 341 meetings they have been brow-beaten, verbally abused, and harassed without any semblance of decorum being implemented to prevent such action of lay persons who appear and conduct examination of the debtor under oath whose testimony may later be brought into court for impeachment purposes. Instances were noted where the debtor recited that questions were asked in the 341 meeting examination by various parties in such a manner that before the answer could be given to one question, another party would ask another question; and, then, when asked on matters coming before this court for impeachment purposes stated that one was unable to respond to the questions; and, therefore, any answer that they gave may not have been responsive under the circumstances. These practices, while the debtor is examined under the solemn oath to tell the truth, reflect adversely upon this Court and the entire judicial system. The question arises, if the Debtor had filed a motion with the U.S. Trustee's Office for a continuance under the circumstances and if that motion had been denied, what remedy is available to the Debtor to seek relief from such ruling? Is there no redress to the Debtor and his attorney. Must they travel 150 miles round trip from Tazewell to Abingdon for no purpose whatsoever? Must the Debtor and the attorney appear for a second time on an additional date, which would not have been required otherwise? Must the Debtor bear the expense of a second journey? These questions loom large when considered in light of the U.S. Trustee's thesis that this Court has no jurisdiction over any facet of the section 341 creditors' meetings.

Accordingly, for the foregoing reasons, the Order was properly entered.

Service of a copy of this Memorandum Opinion shall be made by mail to the Debtor; counsel for Debtor; Trustee; and U.S. Trustee.

---

1. The Virginia State Bar ruling does violence to its own unauthorized practice of law, Opinion No. 58, effective July 1, 1984, which provides as follows:

   A nonlawyer employee of a corporation may represent his employer before a tribunal, including bankruptcy court, so long as his activities before the tribunal are limited to the presentation of facts, figures or factual conclusions, as distinguished from legal conclusions. He may not engage in activities involving the examination of witnesses, the preparation and filing of briefs or pleadings, or the presenting of legal conclusions.