Michael H. DITTON

v.

**LEGAL TIMES, AM–Law Publishing Corporation, American Lawyer Media, L.P., and Associated Properties of Delaware, Inc.**

Civil Action No. 96–1277–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 12, 1996.

Michael H. Ditton, Manassas, VA, Pro Se.

Megan Elizabeth Hills, Williams & Connolly, Washington, DC, for Defendants.

### OPINION AND ORDER

DOUMAR, District Judge.

Plaintiff has filed the instant lawsuit against defendants, asserting that they defamed him in a newspaper article appearing in the Legal Times. This matter is before the Court on the defendants' Motion for Summary Judgment. For the reasons discussed below, that motion is **GRANTED.**

### I. Background

On August 12, 1996, the Legal Times published an article which in part reported on the proceedings of a lawsuit plaintiff previously filed against his former employer. Plaintiff now files a second lawsuit, alleging that the Legal Times article defamed him.[1] The gravamen of plaintiff's complaint in this second lawsuit is (1) that the article inaccurately described the testimony and court rulings in the first lawsuit, and (2) that the article did not adequately attribute the first lawsuit as the source of the article's information.

1. Plaintiff informs the Court that the Legal Times article was later republished in the Fulton County Daily Reporter and is available on-line from

### A. The First Lawsuit

On June 24, 1996, plaintiff, an attorney licensed in the Commonwealth of Virginia and the District of Columbia, filed a lawsuit against Holland & Knight and many of the law firm's present and former attorneys. Plaintiff was formerly an associate attorney with Holland & Knight. Proceeding *pro se,* plaintiff alleged that the defendants breached his employment contract, conspired to disparage his professional reputation, and tampered with his car, telephone, computer, and other belongings. Plaintiff moved for a preliminary injunction in the United States District Court for the District of Columbia, asking the Court to enjoin the defendants from continuing (1) to conspire to damage his reputation, (2) to interfere with his real and personal property, and (3) to intercept his personal communications.

On July 23 and 24, 1996, a hearing was held on plaintiff's request for a preliminary injunction before United States District Judge Norma Holloway Johnson. On July 26, 1996, Judge Johnson denied plaintiff's motion. In her memorandum order, Judge Johnson noted that defendants denied all of plaintiff's allegations. She also noted that defendants asserted that plaintiff gave the Federal Bureau of Investigation "sensitive, confidential documents concerning the firm's clients, and failed to comply with the law firm's requests that he see a psychiatrist at the law firm's expense." *See* Mem.Op. at 1–2. One source of this assertion was Mr. Richard O. Duvall, a partner in Holland & Knight, who testified during the July 23, 1996 hearing, "I know that you [plaintiff] reported to me that you had taken certain documents to the FBI. Those documents included dictated transcriptions of material that you had taken out of client files and had had typed...." *See* Defs.' Ex. 2 at 66. The defendants explained to Judge Johnson that this behavior resulted in plaintiff's termination.

In denying plaintiff's motion, Judge Johnson made explicit findings of fact. Among these were two findings particularly relevant

Lexis–Nexis. For ease of exposition, the Court refers to the article as the "Legal Times article."

to the matter before this Court. Judge Johnson found,

> After defendants discovered that plaintiff had made complaints to the Federal Bureau of Investigation concerning his belief that members of the law firm were conspiring against him, and had sent copies of confidential law firm documents to the FBI, he was terminated from his employment.
>
> The testimony of the witnesses from the law firm and Dr. Moscarillo, all of which the Court found to be credible, appears to establish that Ditton suffers from a delusional disorder.

*See* Mem.Op. at 3.

The testimony of Dr. Moscarillo, a psychiatrist who had examined plaintiff, included his professional diagnosis: "I concluded that he [plaintiff] suffered from a delusional disorder of a persecutory type." Defs'. Ex. at 128.

### B. The Legal Times Article

On August 12, 1996, the Legal Times, a legal newspaper distributed in the District of Columbia and northern Virginia, published a fifty-five paragraph article entitled "Illness Poses Quandary for Firms" and subtitled "How a Troubled Lawyer Spelled Trouble For Holland & Knight." To summarize, the article used the facts underlying Ditton's lawsuit against Holland & Knight to launch a broader discussion of the difficult situations in which mentally ill lawyers place their law firms.

Of particular concern to plaintiff are two remarks in the article. In one, the author wrote, "[i]n 1994, Ditton breached client confidentiality by sending a client's documents to the FBI...." In the other, the author commented, "[t]he case starkly illustrates the tug-of-war firms face between dealing compassionately with an employee suffering from a mental illness and meeting their ethical responsibilities to their clients."

Throughout the Legal Times article, the author wove in the details of the case plaintiff filed against Holland & Knight and the hearing before Judge Johnson. By this Court's count, at eleven separate points in the body of the article, the author refers specifically to the plaintiff's allegations in the case, to witnesses' testimony before Judge Johnson, or to Judge Johnson's rulings and ultimate denial of plaintiff's claims. The article also included a photograph of Judge Johnson with the caption, "Judge Norma Holloway Johnson (above) denied Ditton's motion for a preliminary injunction to stop the firm's alleged harassment," and a photograph of Mr. Duvall with the caption, "Holland & Knight's Richard Duvall (above) testified that he had urged Ditton to get help." In addition, at the conclusion of the article, an editor's note appears, advising readers that "Judge Johnson's July 26 order denying Ditton's motion for a preliminary injunction is available on Counsel Connect in the Labor and Employment section of the Library."

### C. The Instant Lawsuit

On September 12, 1996, plaintiff filed a second lawsuit in the United States District Court for the Eastern District of Virginia, alleging that circulation of the Legal Times article in northern Virginia defamed him. He contends that the Legal Times article did not attribute properly the information it contained to the judicial proceedings in the first lawsuit. He also contends that regardless of attribution, the Legal Times article misstated testimony, misrepresented Judge Johnson's findings, and contained factual errors. This, plaintiff argues, penetrates the Legal Times's privilege to publish accounts and abridgments of judicial proceedings.

Defendant has moved for summary judgment, arguing that the privilege does apply, and that all of plaintiff's claims against all of the defendants fail as a matter of law.

Oral argument was held before the Court on October 25, 1996. The matter is now ripe for adjudication.

### II. Legal Analysis

■ Under Virginia law,[2] the elements of libel are (1) publication of (2) an actionable

---

**2.** Plaintiff has alleged that the Legal Times is circulated in northern Virginia and that he was injured by the article's alleged defamation in Virginia. In addition, the defendants readily admit that "the relevant defamation law is the same in all material respects in Virginia and in the

statement with (3) the requisite intent. *See Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir.1993), *citing Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713 (1985). Whether an allegedly libelous statement is actionable is a question of law to be decided by the Court. *Chapin*, 993 F.2d at 1092, *citing Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985).

■ Virginia law will not subject the publisher of reports regarding judicial proceedings to liability unless the publisher abuses that privilege. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 254 (4th Cir. 1988), *citing Alexandria Gazette Corp. v. West*, 198 Va. 154, 93 S.E.2d 274 (1956); Restatement (Second) of Torts § 611. Thus, if the Court determines that the privilege applies and has not been abused, the defendants' summary judgment motion must be granted. *See Rushford*, 846 F.2d at 254–55 (affirming a district court's grant of summary judgment because the district court correctly determined that the privilege applied).

■ For a publisher to be within the privilege to publish reports regarding judicial proceedings, the requirements are (1) that the report properly attributes the information to the judicial proceeding, and (2) the report is a fair abridgement of the judicial proceeding. *Rushford*, 846 F.2d at 254, *citing Dameron v. Washington Magazine, Inc.*, 779 F.2d 736 (D.C.Cir.1985). A publisher properly attributes a report if the average reader is likely to understand that the report summarizes or paraphrases from the judicial proceedings. *Dameron*, 779 F.2d at 739. A publisher fairly abridges the judicial proceeding if the report renders a "substantially correct" account of the proceeding. *Rushford*, 846 F.2d at 254–55; *see also Alexandria Gazette*, 93 S.E.2d at 279.

As the Court of Appeals for the District of Columbia wrote in *Dameron*, "[t]he availability of the privilege encourages the media to disseminate official records—whether verbatim or in fair summaries—without fear of liability for any false, defamatory material that they might contain." *Dameron*, 779 F.2d at 739.

### A. Proper Attribution

■ After carefully reviewing the full text of the Legal Times article, the Court finds that the average reader of the article would understand that the portion of the article concerning plaintiff summarizes and paraphrases from the judicial proceedings before Judge Johnson. Admittedly, the author of the Legal Times article did not exhaustively provide for the reader a direct citation to the judicial proceedings supporting each and every comment in her article. Journalism is not legal scholarship, however, and a journalist cannot be expected to footnote every sentence to her source of information. The Legal Times article instead referred repeatedly to the court testimony and to Judge Johnson's rulings, included photographs of both Judge Johnson and an important defense witness, and concluded with an explanation of how interested readers could obtain the full text of Judge Johnson's memorandum opinion. Thus, the Court finds that the Legal Times article properly attributed the first lawsuit filed by the plaintiff as its source of information regarding the plaintiff.

### B. Substantially Correct Account of the Judicial Proceeding

■ After carefully reviewing the testimony before Judge Johnson, Judge Johnson's memorandum opinion, and the Legal Times article, the Court finds that the Legal Times article provided a substantially correct account of the judicial proceeding.

Plaintiff directs the Court's attention to the article's comment that plaintiff had sent *clients'* confidential documents to the FBI. This comment, plaintiff asserts, is not a substantially correct account of the judicial proceeding, because Judge Johnson found that plaintiff had sent confidential *law firm* documents to the FBI. Plaintiff, however, focus-

District of Columbia, [and] choice-of-law analysis would not affect the outcome of this motion." Def.Mem. in Supp. of Summ.J. at 8. Thus, because no one has contested the plaintiff's assertion that the alleged wrong against him occurred in northern Virginia, and because the Court finds that the law of Virginia and the law of the District of Columbia do not differ on the relevant issues, the Court applies Virginia law.

es his analysis too narrowly. Mr. Duvall, the law firm partner, testified during the judicial proceedings that plaintiff had sent client documents to the FBI. Judge Johnson explicitly found credible all of the law firm's witnesses. As a result, she found as a fact that the plaintiff had sent confidential law firm documents to the FBI. No one pointed Judge Johnson or this Court to any documents sent to the FBI other than the documents about which Mr. Duvall testified. Thus, the Court finds that the comment that plaintiff sent client files to the FBI was a fair account of the judicial proceedings.

The plaintiff also directs the Court's attention to the article's comments about his "mental illness" and about Dr. Moscarillo's recommendation that plaintiff be treated with "anti-psychotic medication." Plaintiff's main complaint regarding these comments appears to rest upon his views of the underlying factual truth regarding his mental health. The Court expresses no opinion regarding plaintiff's mental health; the underlying factual truth regarding plaintiff's mental health is not the issue before this Court. The only issue is whether the Legal Times article provided a substantially correct account of the judicial proceedings in that first lawsuit, including both Dr. Moscarillo's testimony regarding his diagnosis and suggested treatment for plaintiff and Judge Johnson's factual findings regarding plaintiff's mental health. After comparing the Legal Times article with Dr. Moscarillo's testimony and Judge Johnson's memorandum opinion finding plaintiff to be suffering from a mental disorder, this Court finds that the Legal Times article met that standard.

The remainder of plaintiff's complaint essentially makes two requests. First, plaintiff invites the Court to scrutinize line-by-line each nuance and inflection of meaning contained in the Legal Times article. Second, plaintiff asks the Court to find fault with the Legal Times article for not including a more detailed discussion of plaintiff's version of the facts underlying the first lawsuit. The Court, however, declines to act on either of plaintiff's requests. In this case, despite plaintiff's vague and incomplete assertions to the contrary, there is no showing of malice. In the absence of evidence indicating abuse of the privilege protecting the publisher, the prerogative to exercise editorial judgment rightfully belongs to the publisher's editors, not to the judiciary.

## III. Conclusion

In reporting on trial proceedings, the media necessarily *summarizes* the extensive volume of documents and transcription generated in modern litigation. Yet, plaintiff argues that the reporting must be exhaustive and exacting. The Court disagrees. To require the precise and complete dissemination of the entire record would overwhelm not only the media but also the media's readers, viewers, and listeners. Indeed, if the law imposed such a requirement, the Court doubts seriously that the media could effectively report on any lawsuit. Consequently, the law requires only a fair summary, and that is what the Legal Times article provided for its readers.

This Court concludes that as a matter of law the Legal Times article discussing plaintiff's lawsuit against his former law firm was privileged. Thus, none of plaintiff's claims against any of the defendants in the instant case can survive summary judgment.

Accordingly, the defendants' motion for summary judgment is hereby **GRANTED**. The Clerk is **DIRECTED** to send a copy of this order to counsel for the defendants and to the plaintiff.

**IT IS SO ORDERED.**