Anthony Lee BOONE, et al., Plaintiffs,

v.

CITY OF SUFFOLK, VIRGINIA, Defendant,

Landmark Communications, Inc. and Virginia Newspapers, Inc., Intervenors.

No. CIV.A. 2:99CV123.

United States District Court, E.D. Virginia Norfolk Division.

Dec. 13, 1999.

Michael F. Imprevento, Breit, Drescher & Breit, Norfolk, Alan S. Kaufman, Chamberlain and Kaufman, Albany, NY, for Plaintiffs.

Sharon Maitland Moon, LeClair Ryan, Richmond, VA, for defendant.

Gary Alvin Bryant, Conrad Moss Shumadine, Willcox and Savage, Norfolk, Craig Thomas Merritt, Alexander Wellford, Christian & Barton, Richmond, VA, for Intervenors.

## *OPINION AND ORDER EXPLAINING THE GRANTING OF MOTIONS TO INTERVENE AND TO UNSEAL THE COURT–APPROVED SETTLEMENT AGREEMENT*

MORGAN, District Judge.

This matter is before the Court on the motions of Landmark Communications, Inc. ("Landmark") and Virginia Newspapers, Inc. ("Virginia Newspapers") (collectively the "Intervenors") to unseal the settlement agreement in this Fair Labor Standards Act case between the City of Suffolk and forty-eight of its employees. On November 29, 1999, the Court held a hearing and granted the Intervenors' motions to unseal the settlement agreement, but suspended execution of this Order pending appeal. The Court also certified this matter for expedited appeal to the Fourth Circuit.

### I. Procedural and Factual Background [1]

The Plaintiffs, forty-eight police officers, filed this Fair Labor Standards Act

1. The Court has construed the facts as pre-    sented here solely upon the existing record

("FLSA") action on February 1, 1999, to claim back pay and damages as a result of Suffolk's alleged failure to pay overtime compensation for the police officers' alleged work activities performed while off duty. To this day, the parties have not agreed on essential facts such as what constitutes "work time" or the amount of time each officer allegedly spent on such work activities. On June 16, 1999, the Court issued an order to protect personnel-related documents produced in the course of discovery.

In accordance with the common law requirement that settlement of an FLSA claim be approved for fairness by a district court,[2] the parties submitted their agreement to the Court. On October 25, 1999, Suffolk moved to file the settlement agreement under seal. On October 27, 1999, the Court granted Suffolk's motion, and the sealed settlement agreement, along with an agreed stipulation of dismissal with prejudice, was entered. The settlement agreement states that none of the parties "shall publicly disclose the terms of this settlement except as may be required by law." On October 28, 1999, Landmark filed its motion to intervene for the sole purpose of unsealing the settlement agreement. On November 2, 1999, Virginia Newspapers moved to intervene for the sole purpose of unsealing the settlement agreement.

## II. Right to Intervene

### A. The Court's Continuing Jurisdiction

The Fourth Circuit views intervention as "ancillary and subordinate to a main cause and whenever an action is terminated, for whatever reason, there no longer remains an action in which there can be an intervention." *Black v. Central Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir.1974) (holding that employees could not intervene

almost a year later in a consent judgment for a plaintiff who had alleged racial discriminatory employment practices). In *Black* the Court denied the intervenors' attempt to join the action, but the Court recognized that there may be exceptions where intervention is permissible even after the suit has been settled. *Id.* Other courts have explicitly recognized a narrow exception to not allowing intervention where the movants' purpose is solely to assert a public right of access to protected documents. These courts recognize that such intervenors ask the court to exercise its continuing jurisdiction to modify or enforce an order and do not seek consideration of additional claims on the merits. *See Stone v. University of Maryland Medical System Corporation*, 855 F.2d 178 (4th Cir.1988) (allowing movant at Court of Appeals to intervene for the limited purpose of challenging a sealing order); In re *"Agent Orange" Product Liability Litigation*, 821 F.2d 139, 145 (2d Cir.1987); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir.1994); In re *Beef Indus. Antitrust Litig.*, 589 F.2d 786, 788–89 (5th Cir.1979); *Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 161–64 (6th Cir.1987); *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 473–74 (9th Cir.), *cert. denied*, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir.1990), *cert. denied*, 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

In light of these authorities, the language in the settlement agreement that confers continuing jurisdiction on this Court, and the absence of reasonable notice to the Intervenors, the Court **FINDS** that it has jurisdiction to consider the Intervenors' motions.

and for the limited purpose of ruling on intervenors' motions.

**2.** Because the FLSA was enacted to protect workers from sub-standard wages or oppressive working conditions, employees cannot waive their right to overtime wages unless

such a settlement is overseen by the Department of Labor or approved for fairness and reasonableness by a district court. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (1982).

### B. Procedural Requirements for Sealing a Court Order

■ Once the Court has entered an order sealing a document and the parties have relied on the confidentiality order, "it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification." *Federal Deposit Ins. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir.1982). For the Court to change its position risks both working an injustice on the parties to the action and discouraging future litigants from entering settlements predicated on confidentiality.

■ The Court **FINDS** a compelling need for the Court to re-evaluate its sealing of the settlement agreement so that it may meet the Fourth Circuit's procedural requirements for sealing a court order. The Fourth Circuit has stated that when a district court considers entering a confidentiality order, it must first give the public notice and a reasonable opportunity to challenge the sealing order. In re *Knight Publishing Co.*, 743 F.2d 231, 234–35 (4th Cir.1984) (holding that the district court erred in closing the courtroom and sealing courtroom documents in a criminal case without first giving the public notice and an opportunity to be heard); *see also* In re *Washington Post Co.*, 807 F.2d 383, 390 (4th Cir.1986); *Stone v. University of Maryland Medical System Corporation*, 855 F.2d 178, 181 (4th Cir.1988). That is, the Court must docket the motions to seal "reasonably in advance of their disposition so as to give the public and press an opportunity to intervene and present their objections to the court." *Knight Publishing Co.* at 234. The Court must also consider less drastic alternatives to sealing and, if it does enter a sealing order, it must provide "reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." *Id.* In *Stone v. University of Maryland Medical System Corporation*, 855 F.2d 178, 181 (4th Cir.1988), the Fourth Circuit extended application of the *Knight* requirements to civil cases.

■ In order to meet the requirements prescribed in *Knight*, the Court **GRANTS** the Intervenors' motions to intervene in accordance with *Federal Rule of Civil Procedure* 24(b), which allows permissive intervention when the movants' "claim . . . and the main action have a question of law or fact in common."

### III. Three Sources of Access to a Court-Approved Settlement Agreement

There are three sources of a right of public access to a court-approved sealed settlement agreement: (1) the First Amendment's limited guarantee of access; (2) statutory prescription; and (3) the common law presumption of access to judicial documents and records, which antedates the Constitution. The Intervenors assert all three methods as the source of its right to access.

#### A. First Amendment Right of Access

If the right to access is grounded in the First Amendment, the burden, which falls on the one seeking confidentiality, is as rigorous as the burden for overcoming any other fundamental right. The denial of access under the First Amendment must be "necessitated by a compelling government interest and . . . narrowly tailored to serve that interest." In re *Washington Post Co.*, 807 F.2d 383, 390 (4th Cir.1986) (quoting *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)).

The Supreme Court bases the First Amendment right of public access to court records in the historical precedent of the openness of criminal trials and the "significant role of public access in the functioning of the judicial process and the government as a whole." *Globe Newspaper Company v. Superior Court for the County of Norfolk*, 457 U.S. 596, 605–606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S.

555, 580, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In *Globe Newspaper* the Supreme Court explained why the right of access to criminal trials is fundamental to a democratic form of government:

> Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate and serve as a check upon the judicial process-an essential component in our structure of self-government.

*Globe Newspaper Company*, 457 U.S. at 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (footnotes omitted). The Supreme Court has not extended this rationale to include access to civil trial proceedings and papers. Justice O'Connor, concurring in *Globe Newspaper*, stated that neither that opinion nor *Richmond Newspapers* carried "any implications outside the context of criminal trials." *Id.* at 611, 102 S.Ct. 2613. While indubitably the rationale of preserving the integrity of the judicial process obtains in all trials, both civil and criminal, the Supreme Court has not extended this level of public access beyond the realm of criminal adjudication where fundamental procedural safeguards are paramount and where the legal consequences of self-governance manifest themselves in their highest degree of conflict with the individual.

■ In order for the First Amendment right of access to apply, then, the right must be fundamental. As the Supreme Court noted in *Globe Newspaper*, the right of access is fundamental when it concerns a matter that has been historically open to the public and when such access plays a significant role in the functioning of the judicial process. *Globe Newspaper Company*, 457 U.S. at 605–606, 102 S.Ct. 2613. Accordingly, the Fourth Circuit follows the two-prong test articulated in *Press Enterprise* to determine whether a First Amendment right of access is available: (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." In re *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir.1989).

■ The Intervenors were unable to meet the first prong of this test because they could not produce any evidence that the process of entering and approving civil settlement agreements has historically been open to the public, nor any evidence that sealed settlement agreements in civil cases have been historically open to the public. Indeed, the admissions of the Intervenors and the available evidence indicate that such civil settlement terms are usually not reflected in court documents and confidentiality requests are customarily honored.

Landmark nonetheless argues that, under the Fourth Circuit's ruling in *Rushford v. New Yorker Magazine, Inc.*, a First Amendment right of access applies here on the grounds that the settlement agreement represents the adjudication of substantive rights of the parties. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir.1988). In *Rushford*, the Court determined that "the more rigorous First Amendment standard should apply to documents filed in connection with a summary judgment motion." *Id.* at 253. Although the Court in *Rushford* did not expressly conduct the two-prong analysis as required by *Press Enterprise* and later by *Baltimore Sun*, such an analysis was implicit in its analysis. The Court treated the motion for summary judgment "as a substitute for a trial," and recognized that trials have been historically open to the public. *Id.* at 252, 253 (citing *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1067–71 (3d Cir. 1984) (recognizing a First Amendment right of access to both criminal and civil trials)). The Court noted that, had the case

proceeded to trial, the documents at issue would have been made public. *Id.* at 252. Thus, the Court deemed the situation in *Rushford* to have been historically open to the public.

The Court in *Rushford* emphasized that the process in question was the judicial determination of substantive rights. As such, the situation meets the second prong of the *Press Enterprise* test. Public access to the documents that the Court relies on in making a summary judgment motion plays a significant positive role in the functioning of the judicial process. Thus, without explicitly referring to *Press Enterprise*, the Court in *Rushford* determined that the process had been traditionally open to the public and that such openness played a significant positive role in the adjudicatory process.

The Court **FINDS** that the terms of settlement agreements in civil cases have not been historically open to public scrutiny and that the Intervenors have thus failed to meet the first prong of the *Baltimore Sun* test. Accordingly, the Court **FINDS** that its approval for fairness of the compromise settlement between Suffolk and its employees does not trigger a public right to access under the First Amendment.

### B. Statutory Right of Access

■ The FLSA does not provide a statutory right of public access to the settlement agreements which the courts must approve. The Court notes that the *Federal Rules of Civil Procedure* and the *Federal Rules of Evidence* contain rules governing the procedures and uses of sealing orders with the purpose of encouraging and facilitating settlement. The Court **FINDS** no controlling federal statutory basis for granting public access to the settlement agreement.

### C. Common Law Presumption of Access

Courts have long recognized a common law right to inspect and copy all court records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). This right of access has been grounded in the democratic process itself and in a "citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* at 598, 98 S.Ct. 1306.

■ The Supreme Court in *Nixon* stated that the right to access is not absolute, and it mandated that a court considering a sealing order must engage in a balancing test and exercise its discretion "in light of the relevant facts and circumstances of the particular case." *Id.* at 599, 98 S.Ct. 1306; *see also* In re *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir.1989). According to this balancing test, if the interests in confidentiality outweigh the interest in access, then the presumption of access is rebutted. *Stone v. University of Maryland Medical System Corporation*, 855 F.2d 178, 180 (4th Cir.1988); In re *Knight Publishing Co.*, 743 F.2d 231, 235 (4th Cir.1984). In *Knight Publishing* the Fourth Circuit describes in more detail the test for the common law right of public access:

> The trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests. The Supreme Court has suggested that the factors to be weighed in the balancing test include whether the records are sought for improper purposes, such as promoting public scandals or gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records.

In re *Knight Publishing Co.*, 743 F.2d 231, 235 (4th Cir.1984) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. at 597–608, 98 S.Ct. 1306).

Although a number of circuits have adopted this balancing test, none has stated whether the presumption of public access, once rebutted, disappears or merely shifts the burden of proof to the party seeking access. Accordingly, this Court as-

sumes the former and conducts a pure balancing test.

Against unsealing the settlement agreement, the Court **FINDS** that the First Amendment does not apply; that the non-disclosure order is narrowly tailored in that only the terms of the settlement agreement are sealed; that Virginia statutes mandate that certain employment records be confidential; that the FLSA statute does not require disclosure; and that unsealing the terms of the settlement agreement may chill the efforts of future litigants to settle.

■ The balancing process, however, favors unsealing the document because federal common law and Virginia common law and public policy support disclosure of settlement agreements approved by courts. As discussed herein, federal common law establishes a presumption of public access to court documents. Moreover, the Third Circuit has recognized that a "court's approval of a settlement or action on a motion are matters which the public has a right to know about and evaluate." *Bank of America National Trust & Saving Association v. Hotel Rittenhouse Associates*, 800 F.2d 339 344 (3d Cir.1986).

In the absence of federal common or statutory law specifically designating the reaches and limitations of public access to settlement agreements where there is a requirement of court approval, the Court turns to Virginia common law and public policy as its basis for determining access.[3] A compromise back-wage settlement claim brought under the FLSA is analogous to a wrongful death claim brought under Virginia law insofar as both federal law interpreting the FLSA and the Virginia Code require court approval of compromise claims brought under these respective

statutes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (1982); Va.Code Ann. § 8.01–55 (Michie, 1950); *Shenandoah Publishing House, Inc. v. Fanning*, 235 Va. 253, 368 S.E.2d 253 (1988). In *Shenandoah Publishing House*, the Supreme Court of Virginia relied on a codification of the common-law rule of openness to hold that court documents accumulated in a wrongful death action were improperly sealed. *Id.* at 258, 260. Virginia Code § 17–43, as then codified, stated that "[t]he records and papers of every court shall be open to inspection by any person. . . ." *Id.* at 258. In reaching its conclusion, the Supreme Court of Virginia stated that "[t]he public has a societal interest in learning whether the courts are administering properly the powers conferred upon them." *Id.* at 260. Similarly, in an FLSA action, where federal law requires court approval for fairness before any settlement can be executed, the public has an interest in determining whether the Court is properly fulfilling its duties when it approves a back-wages settlement agreement.

The Court **FINDS** that the agreement is a public document because it is filed in Court and because it requires Court scrutiny and approval for fairness. It should be accessible to the public for review of the Court's fairness in its decision-making, unless the reasons for confidentiality outweigh the reasons for public access which they do not. The Court further **FINDS** that public access to court documents which constitute an adjudication of substantive rights plays an important role in encouraging public trust in the judicial process.[4] In further support of its decision to unseal the agreement, the Court **FINDS** that unsealing the terms of the settlement agreement should not significantly damage the plaintiffs or defendants, and that un-

---

3. Where there is an absence of specific federal common law, a federal court may find the common law of the state where the transaction or events occurred as declarative of the federal common law. *See, e.g., Royal Indemnity Co. v. United States*, 313 U.S. 289, 296, 61 S.Ct. 995, 85 L.Ed. 1361 (1941) (deciding to apply rate of interest in state where the obligation was given and to be performed).

4. Although the adjudication of a party's substantive rights has been cited as a factor in First Amendment jurisprudence, it should be equally important to a common law balancing test. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir.1988).

sealing the agreement does not void any crucial terms of the settlement.

Accordingly, the Court **ORDERS** effective November 29, 1999, the date of the hearing on this matter, that the settlement agreement be unsealed. The Court, however, **SUSPENDS** execution of this Order until the parties have appealed or had the opportunity to appeal the November 29, 1999 Ruling.

## IV. Expedited Appeal

Rule 12(c) of the Local Rules of the Fourth Circuit states: "The Court on its own motion or on motion of the parties may expedite an appeal for briefing and oral argument. Any motion to expedite should state clearly the reasons supporting expedition, the ability of the parties to present the appeal on the existing record, and the need for oral argument." Because the issue of what circumstances require a district court to unseal a settlement agreement approved by the court is one of great public importance and likely to arise again, the Court **ORDERS** that the appeal of its Ruling be expedited. The Court **FINDS** that the parties are able to present an appeal on the existing record and that there is no need for oral argument.